UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CARLY GEORGE, | ) | Civ. 09-4088-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART |
| vs. | ) | AND DENYING IN PART |
| | ) | DEFENDANT'S SUMMARY |
| EZMONEY SOUTH DAKOTA, INC., | ) | JUDGMENT MOTION |
| d/b/a EZ PAYDAY ADVANCE, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carly George, filed suit against defendant, EZMoney South Dakota, Inc., and alleges sexual harassment and retaliation in violation of Title VII. EZMoney moves for summary judgment on all claims. George resists the motion. The motion is granted in part and denied in part.

### BACKGROUND

The pertinent facts in the light most favorable to George, the nonmoving party, are as follows:

George began working for EZMoney in July of 2007. Peter McCormick was her managing supervisor. McCormick regularly used vulgar language in conversations with George at EZMoney, including saying "f***" on a daily basis, calling George "f***ing stupid," and telling her that she had a brain the size of a gnat. George felt that sometimes when McCormick said "f***," his tone of voice suggested a sexual innuendo. When McCormick became angry or frustrated, he would yell obscenities at George.

McCormick also used vulgar language with at least seven other female employees. As he did with George, McCormick would yell at female employees and call them stupid. McCormick only directly yelled at one male employee, Corwin Jackson, but he never called Corwin "f***ing stupid" or told him that he had a brain the size of gnat like he told George and the other female employees. Sometimes McCormick talked to George about male employees. He would use vulgar language and make demeaning statements about them, but besides yelling at Corwin, he did not use vulgar or demeaning language directly with male employees.

On at least six or seven occasions, McCormick commented on George's cleavage. Once McCormick told George to change her shirt because he could see her cleavage and a manager was visiting the store. On a different occasion, McCormick told George that she could see he was happy because he had a smile in his pants.

Beyond his vulgar language, McCormick also required George to alter work records and threatened to withhold her paycheck or fire her if she did not alter the records. McCormick only required female employees, and not male employees, to alter work records.

George repeatedly complained to EZMoney managers about McCormick. She called Human Resources Manager Jodi Collien at least twice. After the first phone call, Collien came to the Sioux Falls EZMoney store, but she did not discuss George's complaint with McCormick. During

the second phone call, Collien stated that she would contact state manager Nick Meindl and get back in touch with George, but Collien left EZMoney before contacting Meindl.

When Collien failed to respond, George called EZMoney's hotline and reported her concerns. She also called Meindl directly. Per Meindl's request, George wrote down her concerns and faxed them to Meindl. Meindl visited the store two weeks later, never spoke to George, and failed to respond to other calls from George. George and another female employee, Tamara Tipton, called Collien's replacement, Lance Eberhardt, several times to complain about McCormick. When McCormick made the smile in his pants comment, George also called store manager Dave McGee.

On May 12, 2008, George decided to quit EZMoney and gave her two weeks' notice. She worked one-and-a-half hours on May 13, 2008, before she closed the store early and left. George filed a sexual harassment complaint with the South Dakota Division of Human Rights and exhausted her administrative remedies on the sexual harassment claim before filing this suit.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a summary judgment motion, the court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). Similarly, the nonmoving party receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

The Eighth Circuit has cautioned that courts should be especially hesitant to grant summary judgment in employment discrimination cases. *See, e.g., Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("Summary judgment should seldom be used in employment-discrimination
4

cases."); *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 486-87 (8th Cir. 1998) (reasoning that a district court should "keep in mind the caution that summary judgment should seldom be used in discrimination cases").

## DISCUSSION

### I. Hostile Work Environment Claim

George alleges that McCormick's daily use of vulgar language, the comments about her cleavage, the comment that McCormick had a smile in his pants when he talked to her, and McCormick's differing treatment of male and female employees constitute a hostile work environment. EZMoney responds that George has not met the factual threshold to make out a hostile work environment claim.

Title VII recognizes a cause of action for sexual harassment based on a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). An employee must make a four-part showing for a hostile work environment claim based on a supervisor's sexual harassment: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of her employment. *Brenneman v. Famous Dave's of*

*Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (citing *Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007)).[1]

Element one of the prima facie case is undisputed because George is female and, therefore, belongs to a protected group. *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999). But the parties dispute the second element, whether McCormick's actions constitute unwelcome harassment.

A.  **Sexual Harassment**

"[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). That the conduct in question is subjectively unwelcome is "[t]he gravamen of any sexual harassment claim." *Meritor*, 477 U.S. at 68. To show that the conduct was unwelcome, the employee must indicate by her conduct that the alleged harassment was

---

[1] George and EZMoney both discussed a fifth element of the hostile work environment claim: "(5) that the employer knew or should have known of the harassment and failed to take proper remedial action." Docket 26 at 4; *see also* Docket 25 at 3. In a racially hostile work environment case, the Eighth Circuit held that while the fifth element "is normally part of a prima facie case for hostile work environment," it is not at issue when "most of the harassment was at the hands of . . . supervisors." *Ross v. Douglas Cnty. Neb.*, 234 F.3d 391, 396 n.5 (8th Cir. 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998)). In a supervisor-created hostile work environment based on an employee's sex, the Eighth Circuit has articulated the prima facie test without the fifth element. *See Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004). Because the alleged harasser is George's supervisor, the court will only discuss the four elements stated above.

unwelcome. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir. 1996). Because this question turns on a credibility determination, it is usually a question of fact for the jury. *Meritor*, 477 U.S. at 68.

George complained to EZMoney's human resources managers, Collien and Eberhardt, the state manager, Meindl, and the store manager, McGee. She also called EZMoney's hotline. EZMoney does not dispute that George found McCormick's regular use of vulgar language and other comments unwelcome. Thus, George subjectively found McCormick's conduct unwelcome.

While McCormick's conduct was subjectively unwelcome, the parties dispute whether the conduct is objectively offensive. George argues that McCormick's constant use of vulgar and demeaning language constitutes sexual harassment. EZMoney admits that McCormick's language and statements are inappropriate in the workplace, but contends that his actions do not rise to the level of sexual harassment.

To defeat summary judgment, an employee "must present evidence from which a reasonable jury could find that [the supervisor's] conduct towards her was more than merely offensive, immature or unprofessional, for conduct that does not exceed that threshold of severity is insufficient to constitute a prima facie case of sexual harassment." *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1027 (8th Cir. 2004). "For sexual

harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Meritor*, 477 U.S. at 68 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Objectively, the conduct "must be extreme and not merely rude or unpleasant." *Jackson v. Ark. Dep't of Educ.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003)). In making this determination, the fact-finder views the facts from the totality of the circumstances. *Faragher*, 524 U.S. at 787-88.

George argues that McCormick only used vulgar language with her and the other female employees. He did not use such language directly with male employees. For support, she relies on *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001) and *Quick*, 90 F.3d at 1378. In *Beard*, the supervisor frequently brushed his body against the employee's breasts, rubbed a pair of cooking tongs against her breasts, and flicked a pen against her nipples. 266 F.3d at 798. The supervisor also spoke in sexual terms to male employees and gave male employees "titty-twisters." *Id.* The Eighth Circuit upheld the jury's verdict for the employee and reasoned that "[a] plaintiff in this kind of case need not show, moreover, that only women were subjected to harassment, so along as she shows that women were the **primary target** of such harassment." *Id.* (emphasis added). In *Quick*, the

8

Eighth Circuit similarly reasoned that "[e]vidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment." 90 F.3d at 1378.

George argues that McCormick only subjected female employees to his vulgar and demeaning language and only screamed obscenities at female employees. In her deposition, George admitted that McCormick was rude to Corwin and yelled at him on a daily basis. But McCormick never called Corwin "f***ing stupid" directly to his face like he did to George and other women, but rather would tell George that Corwin was an idiot and "f***ing stupid." George contends that Corwin quit because of McCormick's treatment of George. Three other male employees lost their employment while George worked at EZMoney, one was fired for stealing, one was never actually hired, and another failed a drug test. In comparison, eight women, including George, quit during the same period, and seven women, including George, complained about McCormick's behavior toward them before quitting.

EZMoney argues that McCormick's conduct did not convey sexual overtones and that George did not show that McCormick used vulgar language such as "f***" in a sexually suggestive manner. McCormick's conduct need not be overtly sexual. *Kopp v. Samaritan Health Sys., Inc.*, 13

9

F.3d 264, 269 (8th Cir. 1993) ("The predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature."). "Rather, the key issue 'is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' " *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). George must only show that women were the primary target of McCormick's vulgar language. *See Beard*, 266 F.3d at 798. As explained above, she has made this showing because McCormick only used vulgar language with George and other female employees.

George must also show that McCormick's conduct constituted harassment. *Harris*, 510 U.S. at 23. To determine if conduct is harassment, the fact-finder examines the frequency of the conduct, its severity, and whether it is physically intimidating or humiliating. *Id.*

The frequency here was high because McCormick used vulgar language on an almost daily basis. On severity, while Title VII is not "designed to purge the workplace of vulgarity," *Harris*, 510 U.S. at 23 (internal quotation omitted), repeated vulgar language can be demeaning and humiliating. *See, e.g.*, *NMC Finishing v. NLRB*, 101 F.3d 528, 531 (8th Cir. 1996) (reasoning that obscenity can "degrade and humiliate" workers (citing *NLRB v. Longview Furniture Co.*, 206 F.2d 274, 275 (4th Cir. 1953)));

*Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 965 (8th Cir. 1993) ("Vulgar and offensive epithets such as these are 'widely recognized as not only improper but as intensely degrading, deriving their power to wound not only from their meaning but also from the disgust and violation they express phonetically.' " (quoting *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983))).

McCormick repeatedly, on an almost daily basis, called George stupid and used "f***" when speaking to George. Repeatedly calling someone stupid is demeaning and degrading. When vulgar language and demeaning comments on intelligence are primarily directed at women, a jury could find that McCormick's conduct was sexual harassment.

George also argues that McCormick's other actions constitute sexual harassment. One time, in response to a question by George if he was happy, McCormick said that he had a smile in his pants because he was talking to her. McCormick also told George on six or seven occasions that he noticed her cleavage. Further, McCormick ordered George and the other female employees to alter company work records, but he did not require male employees to alter work records. When viewing the totality of the circumstances, George has alleged sufficient facts that a jury could find that McCormick created a workplace "permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. at 21, and, thus, George has met the second element of the hostile work environment claim.

In response, EZMoney contends that George's arguments about what happened to other employees constitutes inadmissible hearsay and, thus, cannot defeat summary judgment. For support, EZMoney cites *Reynolds v. Land O'Lakes, Inc.*, 112 F.3d 358 (8th Cir. 1997), which reasoned that an employee's report of a supervisor's statement "appears to be an inadmissible hearsay statement, which standing alone, 'may not defeat a summary judgment motion.'" *Id.* at 364 (quoting *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)).

A "district court must base its determinations regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Firemen's Fund*, 8 F.3d at 1310 (citing *Fin. Timing Publ'ns v. Compugraphic Corp.*, 893 F.2d 936, 942 n.6 (8th Cir. 1990)). George has direct knowledge of what McCormick said to her and that evidence will likely be admissible. She also knows what was said in her presence. EZMoney kept business records of complaints, and these records will likely be admissible at trial. George can also call other employees as witnesses. George has alleged sufficient, admissible evidence to meet the second prima facie element of sexual harassment.

George has also fulfilled the third element of the prima facie case, a causal nexus between harassment and the plaintiff's protected status,

because, as stated above, McCormick only directly used profanity with George and other female employees, a protected group.

The fourth element of the prima facie case requires that the harassment affect a term, condition, or privilege of employment. *Brenneman*, 507 F.3d at 1144; *see also Harris*, 510 U.S. at 23 (reasoning that an environment is hostile when the harassment "unreasonably interferes with an employee's work or performance").

George argues that she has met this element because she was constructively terminated from EZMoney. EZMoney responds that George's constructive discharge discussion is "an attempt to shoe-horn in her retaliation arguments, despite her failure to preserve a true retaliation claim." Docket 29 at 12. As discussed below, George cannot sustain summary judgment on her retaliation claim. But in her complaint, George argues that she was constructively discharged because of the severity of the hostile work environment. *See* Docket 1 at ¶ 20. Thus, George alleged constructive termination in her complaint for the hostile work environment claim and is not attempting to "shoe-horn" in her retaliation claim.

Constructive discharge can be argued as an effect of a term or condition of employment under a hostile work environment theory. *See Hukkanen v. Int'l Union of Operating Eng'rs*, 3 F.3d 281, 285 (8th Cir. 1993) (finding that the sexually hostile work environment resulted in the

13

employee's constructive discharge). A constructive discharge occurs "when an employer intentionally creates a work environment so intolerable to compel a reasonable employee to quit, and the employee does in fact quit." *Tork v. St. Luke's Hosp.*, 181 F.3d 918, 919 (8th Cir. 1999). "A hostile-environment constructive discharge claim entails something more [than a hostile work environment claim]: working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 130 (2004); *see also Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008) (reasoning that a plaintiff must "show that 'a reasonable person in [her] situation would find the working conditions intolerable.' " (quoting *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007))).

Employees must make a two-part showing to satisfy the constructive termination test: (1) that a reasonable person would have found the working conditions intolerable; and (2) that the employer either intended to force the employee to resign or could have reasonably foreseen that she would resign as a result of its actions. *See Anda*, 517 F.3d at 534; *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1008 n.3 (8th Cir. 2000).

McCormick's yelling and vulgar language often brought George to tears. She was constantly called stupid and compared to having a brain like a gnat. Not only did she have to work in this environment, but she knew

14

that only female, not male, employees had to endure this treatment. A jury could find that a reasonable person would find this intolerable. Further, a jury could find that EZMoney knew or should have known that McCormick's actions would cause George to quit because George repeatedly complained to various individuals in EZMoney's corporate hierarchy and because seven other women quit after complaining about McCormick's behavior towards them. Accordingly, George has alleged sufficient facts to make out a prima facie case of a hostile work environment.

### B.     Affirmative Defense on Vicarious Liability

The parties' proposed prima facie test contained a fifth element that the employer knew or should have known about the supervisor's discriminatory conduct. As stated above, the Eighth Circuit does not include this element as part of an employee's prima facie case for a hostile work environment. Rather, "[a]n employer is subjected to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765.

EZMoney can avoid vicarious liability by asserting an affirmative defense if it took no tangible employment action against George. *Jackson*, 272 F.3d at 1025. To prove the affirmative defense, defendant must show: (1) " 'that the employer exercised reasonable care to prevent and correct

promptly any sexually harassing behavior;' " and (2) " 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Id.* (quoting *Faragher*, 524 U.S. at 807).

EZMoney has not alleged facts to support either of these two scenarios. George complained to at least four supervisors about McCormick's actions, totaling at least ten complaints. McCormick's supervisors spoke to him about his behavior on at least two occasions and recorded his actions in his personnel file once. EZMoney did not promptly correct McCormick's actions and some of George's phone calls were ignored. There are no facts in the record to support the second avenue for EZMoney to avoid liability. Consequently, EZMoney has not made out an affirmative defense and summary judgment is denied on the hostile work environment claim.

## II.  Retaliation Claim

George also claims a violation of Title VII on a retaliation theory. EZMoney argues that George never checked the retaliation box in her complaint to the South Dakota Division of Human Rights and, therefore, did not exhaust her administrative remedies before filing this action.

An employee alleging retaliation must first exhaust administrative remedies through the EEOC or a comparable state agency. *Bainbridge v.*

*Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004). In *Bainbridge*, an employee alleged retaliation and hostile work environment claims. *Id.* at 757. In his complaint to the Iowa Division of Civil Rights, the employee did not check the retaliation box on the complaint form. *Id.* at 760. The district court found that the employee did not properly exhaust his administrative remedies. *Bainbridge v. Loffredo Gardens, Inc.*, No. 4:02-CV-40192, 2003 WL 21911063, at *4 (S.D. Iowa July 31, 2003). The Eighth Circuit agreed: "Bainbridge [employee] did not check the box next to 'Retaliation' on the complaint form and did not allege any facts in the complaint form connecting his termination with his alleged complaint about the racial slurs." 378 F.3d at 760; *see also Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (reasoning that the employee failed to put the employer on notice that she was alleging gender discrimination in her EEOC complaint)*; Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000) (finding that the EEOC charge "failed to put the Defendant on notice that Kells [employee] was claiming he was subject to harassment.").

George admits that she did not check the retaliation box on her complaint to the South Dakota Division of Human Rights. Docket 26 at 4 n.2. George does not argue that the facts in her South Dakota complaint support a retaliation claim, and she did not provide a copy of her complaint to the court. She also did not respond to EZMoney's arguments in its brief

17

supporting summary judgment on the retaliation claim. Accordingly, summary judgment is granted on the retaliation claim.

## CONCLUSION

EZMoney moves for summary judgment on George's hostile work environment and retaliation claims. Because genuine issues of material fact exist on the hostile work environment claim, summary judgment is denied on that claim. Summary judgment is granted on the retaliation claim because George failed to exhaust her administrative remedies, and she failed to respond to EZMoney's arguments regarding her retaliation claim. Accordingly, it is

ORDERED that defendant's motion for summary judgment (Docket 22) is granted in part and denied in part.

Dated January 25, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE